IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| PERKINS COMMUNICATION, LLC, et al., | ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | 7:15-cv-01172-LSC |
| D'SHANNON PRODUCTS, LTD., et al., | ) ) | |
| Defendants. | ) ) | |

## Memorandum of Opinion

Plaintiffs Perkins Communication, LLC ("Perkins Communication") and Matrix, LLC ("Matrix") (collectively "Plaintiffs") filed this action against D'Shannon Products, Ltd. ("D'Shannon"), Scott Erickson ("Erickson"), Michael Moore, and Earl Ramey ("Ramey") (collectively "Defendants") alleging negligence, wantonness, breach of contract, and fraud. Before the Court is Ramey's Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction. (Doc. 6.) The issues here have been fully briefed by the parties and are ripe for review. For the reasons stated below, Ramey's motion to dismiss (Doc. 6) is due to be granted.

## I.   Background

Plaintiffs brought this action seeking damages arising from allegedly faulty repairs Defendants performed on Plaintiffs' aircraft. Plaintiffs, Alabama businesses,

contracted with D'Shannon to modify and upgrade the aircraft. Some of these upgrades involved repairs to the engines. At the outset of the negotiations, Erickson, D'Shannon's principal, indicated that its agent, Ramey, would perform the engine work in North Carolina where he works and resides. Ramey did not solicit the work nor was he involved in the negotiations between Plaintiffs and D'Shannon.

Ramey worked on the engines in North Carolina, knowing at all times that the engines would be sent back to Alabama after the work was completed. During that time, Ramey and Joe Perkins ("Perkins"), Matrix's principal, communicated several times by telephone and text messaging regarding the status of the repairs. Ramey also asked Perkins directly for payment because he had not yet been paid for his work. While the affidavits are unclear, it appears that the conversation regarding payment occurred after Ramey had completed the repairs. When Ramey completed the repairs, Plaintiffs held D'Shannon—not Ramey—responsible for transporting the engines to Alabama, as indicated by email correspondence between Perkins and Erickson. (Doc. 16 Ex. B.)

Plaintiffs filed this action based on their dissatisfaction with the repairs. Ramey's motion to dismiss included an affidavit stating that he resides in North Carolina, performed all of the repairs in North Carolina, has not been to Alabama

in more than five years, and before that traveled to Alabama to visit family and for reasons connected to prior, unrelated employment. Ramey further stated that he does not own or lease any property in Alabama, and has no assets, accounts, or other real or personal property in Alabama.

Plaintiffs responded to Ramey's motion to dismiss with an affidavit by Perkins stating the following: (1) D'Shannon used Ramey as a selling-point when soliciting Plaintiffs' business, (2) D'Shannon's emails to Plaintiffs made clear that Ramey would be Perkins's "main point of contact" regarding the repairs, (3) Perkins spoke to Ramey on multiple occasions regarding his progress on the repairs, (4) Ramey called Perkins and asked him for payment, (5) defendant Mike Moore approached Perkins about investing in Ramey's son's racing team, and (6) Ramey knew that the engines would be delivered to and primarily used in Alabama. Plaintiffs also request jurisdictional discovery regarding general jurisdiction based on the fact that Ramey's new company, which was not involved with the engine repairs, advertises on dirt-track race cars that could compete in Alabama, and that this new company also advertises on Facebook, which is available in Alabama.

## II.   STANDARD OF REVIEW

In a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff generally "bears the burden of establishing a prima facie case of

jurisdiction over the movant, non-resident defendant." *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988). "A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). The Court must treat facts alleged in the complaint as true if they are not controverted by affidavits submitted from the defendant. *Id.* However, if the defendant submits affidavits, the plaintiff must produce additional evidence supporting jurisdiction unless the defendant's affidavits are only conclusory. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). When the plaintiff's evidence conflicts with the defendant's evidence, the Court must "construe all reasonable inferences in favor of the plaintiff." *Id.*

## III.  DISCUSSION

"A federal district court sitting in diversity may exercise personal jurisdiction to the extent authorized by the law of the state in which it sits and to the extent allowed under the Constitution." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). Personal jurisdiction is generally a two-step inquiry, as the Court must consider both whether personal jurisdiction is consistent with the forum state's long-arm statute and whether the exercise of personal jurisdiction is consistent with the Due Process Clause of the Fourteenth

Amendment. *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004). However, for federal courts in Alabama "the two inquiries merge, because Alabama's long-arm statute permits the exercise of personal jurisdiction to the fullest extent constitutionally permissible." *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007) (citing *Sieber v. Campbell*, 810 So. 2d 641, 644 (Ala. 2001)). Thus, the Court need only consider the limits of the Due Process Clause. *Mut. Serv. Ins. Co.*, 358 F.3d at 1319.

"[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). The "minimum contacts" test developed in *International Shoe*, while initially applied to a corporation, has since been applied to natural persons as well. *Calagaz v. Calhoon*, 309 F.2d 248, 254-255 (5th Cir. 1962).[1]

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior close of business on September 30, 1981.

There are two types of personal jurisdiction—general jurisdiction and specific jurisdiction—but both are based on the defendant's contacts with the forum state.

## A.    General Jurisdiction

General jurisdiction exists over defendants "when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011). The contacts must be sufficient that a suit in the subject state, even on unrelated dealings, is justified. *See Int'l Shoe Co.*, 326 U.S. at 318. For example, a foreign mining corporation whose mining activities ceased entirely, and whose general manager and president maintained an office in Ohio to conduct activities on behalf of the company by keeping files, holding meetings, and distributing paychecks, was subject to general personal jurisdiction in Ohio because the corporation, through its president was "carrying on in Ohio a continuous and systematic, but limited, part of its general business." *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437, 438 (1952). However, a defendant, which had no place of business, employees, bank accounts, advertisements, or manufacturing facilities in North Carolina, but which had other companies distribute its products in North Carolina was not subject to general personal jurisdiction there. *See Goodyear Dunlop*

*Tires Operations, S.A.*, 131 S. Ct. at 2857 ("[The defendant's] attenuated connections to the State fall far short of the 'continuous and systematic general business contacts' necessary to empower North Carolina to entertain suit against [the defendant] on claims unrelated to anything that connects [it] to the State.").

Ramey's contacts with Alabama are not sufficient to provide Alabama with general jurisdiction over him. Ramey stated in his affidavit that he is a resident of North Carolina, has not been to Alabama in more than five years, does not own or lease property in Alabama, has no mailing address or phone number within Alabama, and has no assets, accounts, or other real or personal property in Alabama. D'Shannon using Ramey as a selling-point is conduct by D'Shannon— not Ramey. Also, the fact that Ramey, who never left North Carolina, corresponded with Perkins through telephone and text messaging does not evidence Ramey's systematic and continuous contact with the state of Alabama necessary for a finding of general jurisdiction.

Matrix's request for discovery on the issue of general jurisdiction, averring that Ramey's new company advertises on Facebook, which is accessible in Alabama and advertises on dirt-track race cars that may race in Alabama, is unlikely to yield evidence of the kind of contacts necessary to support general jurisdiction. Also, Matrix failed to formally move the Court for jurisdictional discovery and instead

included its request in its briefs. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1280–81 (11th Cir. 2009) (holding that the district court did not err in not allowing jurisdictional discovery when the plaintiff "never formally moved the district court for jurisdictional discovery but, instead, buried such request in its briefs as a proposed alternative to dismissing [the defendant]" and failed to "take[] every step possible to signal to the district court its immediate need for such discovery"). Because Plaintiffs have failed to formally move for jurisdictional discovery and have not shown why discovery would be fruitful, the Court finds that discovery is not warranted. The Court has before it sufficient facts to show that Alabama does not have general jurisdiction over Ramey.

### B.    Specific Jurisdiction

Even if Ramey is not subject to general jurisdiction, he might nonetheless be subject to specific jurisdiction. "Where a forum seeks to assert specific personal jurisdiction over a nonresident defendant, due process requires the defendant have 'fair warning' that a particular activity may subject him to the jurisdiction of a foreign sovereign." *Madara*, 916 F.2d at 1516. Specific personal jurisdiction does not require a large volume of contacts with the forum state, as even a single purposeful contact may give rise to personal jurisdiction. *See McGee v. International Life Ins. Co.*, 355 U.S. 220, 223 (1957); *see also Licciardello v. Lovelady*, 544 F.3d

1280, 1285 (11th Cir. 2008) ("The Court has made clear . . . that '[s]o long as it creates a "substantial connection" with the forum, even a single act can support jurisdiction.'" (alteration in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985))).   Demonstrating specific personal jurisdiction requires three components. First, the contacts with the forum state must be related to the cause of action. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773–774 (1984) (noting that the regular circulation of magazines in the forum state is sufficient to support personal jurisdiction in a libel action based on that magazine's contents). Second, the contacts with the forum state must be purposeful. *Burger King Corp.*, 471 U.S. at 473–474. Finally, related to purposefulness, the Court must determine whether the defendant has a sufficient connection to the forum "that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

If the Court finds that sufficient contacts exist to subject an out of state defendant to the forum state's courts, the Court must also consider whether the exercise of jurisdiction would "offend traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 113 (1987). This analysis requires weighing various factors: the burden placed upon the defendant, the interests of the forum state in deciding the

dispute, the plaintiff's interest in litigating in that forum, the interests of the interstate judicial system in an efficient resolution of disputes, and the interests of fundamental social policies. *See World-Wide Volkswagen Corp.*, 444 U.S. at 292; *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1251 (11th Cir. 2000).

Ramey had the following contacts with Alabama: (1) Ramey's work on the engines in North Carolina knowing that those engines would be delivered to Alabama, and (2) Ramey's contact with Perkins, who was in Alabama, to ask for direct payment and to communicate regarding the status of the repairs. Although Plaintiffs argue that Ramey's accepting a job and payment for his work on the engines through D'Shannon constitutes a third contact, "[an employee's] contacts with [the forum] are not to be judged according to [his] employer's activities there. . . . Each defendant's contacts with the forum State must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984). Thus, the fact that Ramey worked for D'Shannon and that D'Shannon used Ramey's unique skill-set when contracting with Plaintiffs do not constitute contacts that Ramey himself had with Alabama.

Having identified Ramey's contacts with Alabama, the Court must determine whether the Plaintiffs' causes of action "arise out of or relate to" Ramey's contacts with Alabama. The Plaintiffs' claims—negligence, wantonness,

breach of contract, and fraud—arose out of the alleged faulty and delayed repairs of the engines. Ramey's repair-work relates to these claims, as the Plaintiffs' claims arose out of the quality of the repairs. Further, Ramey's communications with Perkins regarding the status of the repairs relate to these claims, as they concerned the engines during the time Ramey worked on them.

However, Ramey's conversation with Perkins regarding his need for payment is not related to the Plaintiffs' lawsuit. From the facts offered, it appears that this conversation took place after Ramey had completed his repairs on the engines. The Plaintiffs' claims arose out of the quality of the repairs as well as the alleged delay in completing them. Thus, because Plaintiffs' claims arose *before* Ramey called Perkins asking for payment, their conversation is not related to Plaintiffs' claims and therefore not pertinent to the Court's specific personal jurisdiction analysis. And, even if related, this conversation fails to meet the purposeful availment component of specific personal jurisdiction.

Personal jurisdiction purposeful availment analysis considers whether Ramey purposefully availed himself of the benefits of doing business in Alabama as to the two related contacts. Ramey's knowledge that the engines would be sent back to Alabama is insufficient to show purposeful availment. *See, e.g. Charlie Fowler Evangelistic Ass'n, Inc. v. Cessna Aircraft Co.*, 911 F.2d 1564, 1566 (11th Cir. 1990)

(holding that the defendant corporation that repaired an airplane in Mississippi, knowing that the airplane was flying to Florida, did not purposefully avail itself of the protections and benefits of Florida because the defendant did nothing to solicit that repair contract and "simply repaired an engine part on a single aircraft which was headed out of state"). Here, like the defendant in *Cessna Aircraft Co.*, Ramey did nothing to solicit the engine-repair contract—D'Shannon solicited, negotiated, and entered into the contract with Perkins. Ramey did nothing more than repair the engines. When the engines arrived, Ramey repaired them and, when the repairs were completed, D'Shannon—not Ramey—was responsible for their transportation to Alabama. Ramey's knowledge that the engines would go to Alabama is not enough to constitute purposeful availment. *See Cessna Aircraft Co.*, 911 F.2d at 1566.

Ramey's other contact, the phone calls and text messages with Perkins, also does not support a finding that Ramey purposefully availed himself of the benefits of doing business in Alabama. The communications appear to focus on Ramey's progress on the repairs.  Through those limited communications, Ramey could not have foreseen that he could be haled into an Alabama court. *See, e.g. Future Technology Today, Inc.*, 218 F.3d at 1251 (holding that the foreign defendant's calling the plaintiff to solicit a contract for a one-time service, with all contract

negotiations transmitted by telephone, and with the defendant signing the contract in a non-forum state was insufficient to constitute purposeful availment); *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir. 1995) ("It is well-established that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts," especially considering there were no indications that the defendant received a benefit from the markets and laws of the forum state.).

Because the Court has found that there are insufficient related contacts to subject Ramey to personal jurisdiction in Alabama, the Court need not evaluate whether jurisdiction over Ramey would be fair. *See World-Wide Volkswagen Corp.*, 444 U.S. at 294 ("Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment."). Personal jurisdiction over Ramey does not comport with due process and, as such, Ramey cannot be made to defend this action in Alabama.

## IV. CONCLUSION

For the reasons discussed above, Ramey's motion to dismiss this action for lack of personal jurisdiction (Doc. 6) is due to be GRANTED. A separate order consistent with this opinion will be entered.

**DONE** AND **ORDERED** ON OCTOBER 8, 2015.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

182184