FILED
2016 Aug-17 PM 03:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | |
|---|---|
| PERKINS COMMUNICATION, LLC, ) | |
| and MATRIX, LLC ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CASE NO.: 7:15-CV-01172-LSC |
| ) | |
| D'SHANNON PRODUCTS, LTD, ) | |
| SCOTT ERICKSON, ) | |
| MICHAEL MOORE, and ) | |
| EARL RAMEY, ) | |
| ) | |
| Defendants. ) | |

## FIRST AMENDED COMPLAINT

Perkins Communication, LLC (hereafter "Perkins Communication") and Matrix, LLC (hereafter "Matrix") (collectively, the "Plaintiffs") respectfully submit this First Amended Complaint pursuant to *Federal Rules of Civil Procedure* 8, 9, and 15 against Defendants D'Shannon Products, Ltd. (hereafter "D'Shannon"), Scott Erickson (hereafter "Erickson"), and Michael Moore (hereafter "Moore").  Plaintiffs hired D'Shannon to perform modifications and upgrades to its airplane.  D'Shannon used the individual Defendants to perform the contracted work.  The modifications were not done according to industry standards

and, as a result, were done in a shoddy and dangerous manner that left the plane unsafe to operate.

## PARTIES

1. Plaintiff Perkins Communication, LLC is an Alabama Limited Liability Company with its principal place of business in Tuscaloosa County, Alabama.

2. Plaintiff Matrix, LLC is an Alabama limited liability company with its principle place of business in Montgomery County, Alabama.

3. Defendant D'Shannon Products, Ltd. is a Minnesota limited company with its principal place of business located in Wright County, Minnesota.

4. Defendant Scott Erickson is an adult resident of Hennepin County, Minnesota.

5. Defendant Michael Moore is an adult resident of Iredall County, North Carolina.

## FACTS

6. Plaintiff Perkins Communication is the owner of a Beechcraft Baron aircraft (the "Baron"). Joe Perkins ("Perkins") uses the Baron for business purposes involving his two wholly owned companies, Perkins Communication and Matrix.

7. In May 2013, Plaintiffs hired Defendants to perform modifications and upgrades on the Baron. The modifications and upgrades included work on the Baron's windows, propellers, and engines. Specifically, Defendants installed eight new windows and a new windshield and two new propellers. The engines were upgraded to the Genesis Engine Conversion sold by D'Shannon, new camshaft and lifters, new fuel systems, new starters, and baffles.

8. Before contracting with D'Shannon, Perkins of Perkins Communication and Matrix inquired upon Erickson, President of D'Shannon, as to whether or not D'Shannon had the appropriate insurance in place to cover damages if the modifications and upgrades went badly. Erickson represented that D'Shannon had appropriate insurance. In fact, D'Shannon had no insurance in place during some or all the time the engines were being rebuilt.

9. Before the Plaintiffs contracted with D'Shannon, Erickson assured Perkins that only Continental-approved parts would be used in the engines. In fact, the Defendants used unauthorized parts.

10. Before the Plaintiffs contracted with D'Shannon, Erickson assured Perkins that D'Shannon had a "cutting edge" engine shop. In fact, this engine shop did not exist. The testing equipment and other tools required to run the shop had not be purchased. The principal mechanic used on the project, Earl Ramey, had not been hired. The parts required for the rebuild were not in their possession.

11. Erickson claimed that D'Shannon's mechanics had outstanding experience and expertise. In fact, Erickson knew that Defendant Mike Moore had previously had his FAA license revoked. Further, Erickson knew that Ramey had never built an aircraft engine.

12. The modifications and upgrades did not go smoothly. The modifications and upgrades were not completed on time. As a result, Plaintiffs were required to incur costs renting other airplanes while the Baron was being upgraded.

13. Defendants completed the modifications and upgrades in a shoddy manner. Defendants repeatedly changed the specifications of the parts they were using. According to Defendants' documentation, parts and tools that are not approved for use in a plane of the Baron's make and model. The use of these unauthorized parts rendered the Baron unairworthy. Even had the engines not failed, they would have needed to be removed and replaced due to the use of unauthorized parts.

14. Some of the engine parts were not installed according to industry standards or Continental Motors instructions. Other parts were not bolted tightly enough.

15. In late fall 2013, Defendants represented that the modifications and upgrades were complete and that the Baron was ready for use. The installation of

the engines was delayed because Moore refused to sign the repair logs. Moore refused to sign the logs because he believed that Erickson lacked proper insurance to cover him for future engine failures.

16.   Defendants provided Plaintiffs with certifications detailing the parts that were installed during the upgrade. Plaintiffs accepted the Baron, unaware that the modifications and upgrades had been completed poorly.

17.   Plaintiffs placed the Baron into operation and, at all times, Mr. Perkins, its pilot, operated the Baron in a reasonable manner. Regular maintenance to the Baron was conducted by Dixie Air in Tuscaloosa. None of this regular maintenance required entry into the block of the engine modified by Defendants.

18.   On April 22, 2015, Mr. Perkins cranked the Baron to begin a business trip. The oil pressure in the left engine did not rise to normal levels and, in fact, redlined. Mr. Perkins was advised by a mechanic at the airport facility to shut the engines down. The mechanic determined that the oil pressure was, in fact, too low to risk takeoff.

19.   At the time of the failure, the Baron had only logged 147 hours of flight time since the overhaul.

20.   Subsequent investigation into the Baron's left engine by Aviation Engines of Centreville, Alabama ("Aviation Engines"), showed that there were metal shards in the Baron's oil which caused the loss of oil pressure. There were

leaks in at least five cylinders.  Metal shards were also found in the mechanisms for one of the propellers.  Aviation Engines also discovered that two of the crankshaft gear screws were broken.  These bolts and the safety wire connecting them are the most likely source of the metal in the oil.  Other screws in the camshaft were not installed to proper tightness.  Many engine parts were discovered that were inappropriate for use in the Baron.  The gears in the crankshaft showed an unusual amount of wear for an engine with only 147 hours of flying time.  Subsequent investigation revealed that other key components of the engine were shoddily installed.  The damage caused by the engine failures led to damage of other parts not included in the overhaul as well as the loss of both engines and the temporary loss of use of the Baron.

21. As a result of Defendants' wantonness, Plaintiffs have been forced to spend additional funds renting replacement aircraft.  Further, Plaintiffs have been forced to spend money having the Baron repaired.  Plaintiffs have also been compelled to disassemble the Baron's right engine to see if it was as unsafe as the left engine which failed.

22. Defendants' shoddy work was negligent, wanton, and put Mr. Perkins' life in danger.  Had Mr. Perkins taken off, there is a very real chance that he would not have survived the flight.

# CLAIMS

## I. NEGLIGENCE

23. Plaintiffs incorporate all previous paragraphs as if stated fully herein.

24. Defendants had a duty to perform modifications and upgrades on the Baron in accordance with industry, manufacturer, and FAA standards. Defendants also had a duty to properly document the repairs it performed on the Baron. They failed to do so. As a result, Plaintiffs were damaged.

Wherefore, Plaintiffs demand judgment against Defendants for compensatory damages, punitive damages, and any other relief the Court deems just under the circumstances.

## II. WANTONNESS

25. Plaintiffs incorporate all previous paragraphs as if stated fully herein.

26. Defendants had a duty to perform modifications and upgrades on the Baron in accordance with industry, manufacturer, and FAA standards. During the time Defendants were modifying the Baron, it was aware that Plaintiffs intended to use it for air travel. Flying is a dangerous activity. Defendants knew or should have known that their shoddy repair work could lead to someone's injury or death. Despite this knowledge, Defendants failed to perform the upgrades in a workmanlike manner. As a result, Plaintiffs were damaged.

Wherefore, Plaintiffs demand judgment against Defendants for compensatory damages, punitive damages, and any other relief the Court deems just under the circumstances.

### III. BREACH OF CONTRACT

27. Plaintiffs incorporate all previous paragraphs as if stated fully herein.

28. Defendants had a contractual duty to timely complete modifications and upgrades to the Baron. They failed to do so. As a result, Plaintiffs were compelled to spend money renting replacement planes until the modifications and upgrades to the Baron were complete.

29. Defendants also had a contractual duty to deliver engines which complied with industry, manufacturer, and FAA standards. Instead, the Defendants put together a product which used unapproved parts that was unairworthy from the instant the engines were installed on the Baron.

Wherefore, Plaintiffs demands judgment against Defendants for compensatory damages and any other relief the Court deems just under the circumstances.

### IV. FRAUD

30. Plaintiffs incorporate all previous paragraphs as if stated fully herein.

31. Before contracting with Defendants, Plaintiffs asked whether Defendants had adequate insurance to perform the work required under the

contract. Defendants assured Perkins that they had appropriate insurance in place. Based on this assurance, Plaintiffs contracted with the Defendants. On information and belief, Defendants did not have appropriate insurance in place during some or all of the time the repairs were ongoing. Plaintiffs were injured as a result of the work Defendants performed under this fraudulently induced contract. Plaintiffs would not have allowed Defendants to perform the work specified by the contract had Plaintiffs known of the Defendants' fraud.

      32.    Before the contract was formed, Defendants told Plaintiffs that they had a cutting edge engine shop. In fact, this engine shop did not exist. The testing equipment and other tools required to run the shop had not be purchased. The principal mechanic used on the project, Earl Ramey, had not been hired. The parts required for the rebuild were not in their possession. Plaintiffs relied on these promises and were fraudulently induced to contract with the Defendants. Plaintiffs were damaged as a result of this fraud. Plaintiffs would not have allowed Defendants to perform the work specified by the contract had Plaintiffs known of the Defendants' fraud.

      33.    Before the Plaintiffs contracted with D'Shannon, Erickson assured Perkins that only Continental-approved parts would be used in the engines. In fact, the Defendants used unauthorized parts. Plaintiffs relied on these promises and were fraudulently induced to contract with the Defendants. Plaintiffs were

damaged as a result of this fraud. Plaintiffs would not have allowed Defendants to perform the work specified by the contract had Plaintiffs known of the Defendants' fraud.

34. Erickson claimed that D'Shannon's mechanics had outstanding experience and expertise. In fact, Erickson knew that Defendant Mike Moore had previously had his FAA license revoked. Further, Erickson knew that Ramey had never built an aircraft engine. Plaintiffs relied on these promises and were fraudulently induced to contract with the Defendants. Plaintiffs were damaged as a result of this fraud. Plaintiffs would not have allowed Defendants to perform the work specified by the contract had Plaintiffs known of the Defendants' fraud.

Wherefore, Plaintiffs demand judgment against Defendants for compensatory damages, punitive damages, and any other relief the Court deems just under the circumstances.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this the 17th day of August, 2016.

/s/ Andrew P. Campbell
Andrew P. Campbell (CAM006)
Bert M. Guy (GUY005)
Stephen D. Wadsworth (WAD025)
Attorneys for Plaintiffs

OF COUNSEL:

**CAMPBELL | GUIN**
WILLIAMS, GUY & GIDIERE, LLC

Financial Center
505 N. 20th Street, Suite 1600
Birmingham, Alabama 35203
Telephone (205) 224-0750
andy.campbell@campbellguin.com
stephen.wadsworth@campbellguin.com

Capitol Park Center
2711 University Boulevard (35401-1465)
P. O. Box 3206
Tuscaloosa, Alabama  35403-3206
Telephone (205) 633-0206
Facsimile (205) 633-0306
bert.guy@campbellguin.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of August 2016, I filed the foregoing using the ECF Electronic Filing System, which will automatically serve the following:

Sherri R. Ginger
Timothy A. Heisterhagen
Attorneys for Defendant
ARMBRECHT JACKSON LLP
Post Office Box 290
Mobile, AL 36601

/s  Stephen D. Wadsworth

11